IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DENNIS C. VACCO, *et al.*,

                    Plaintiffs,                    Civil Action No.
                                                   1:07-CV-0663 (TJM/DEP)

        vs.

HARRAH'S OPERATING CO., INC., *et al.*,


                    Defendants.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFFS:

ORRICK, HERRINGTON LAW FIRM      FREDERICK D. HOLDEN,  ESQ.
The Orrick Building              MICHAEL T. STOLPER, ESQ.
405 Howard Street                RACHEL P. RANGI, ESQ.
San Francisco, CA 94105-2669

CRANE, PARENTE LAW FIRM          THOMAS M. KERNAN, ESQ.
90 State Street
Suite 1515
Albany, NY 12207

FOR DEFENDANTS:

BOIES, SCHILLER LAW FIRM         GEORGE CARPINELLO, ESQ.
10 North Pearl Street
4th Floor
Albany, NY 12207

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

DECISION AND ORDER

This action, though only relatively recently filed, represents an outgrowth of a longstanding conflict between two rival factions, both striving to gain acceptance as the duly recognized leadership of the St. Regis Mohawk Indian Tribe, and the Tribe's efforts to develop a casino gaming operation in Monticello, New York.  The underlying dispute, which is predicated upon facts which on the surface are uncomplicated, has proven contentious and has generated several discovery disputes, with the latest round presenting the court with issues surrounding the scope and extent of attorney-client privilege and work product doctrine protection as well as the circumstances under which those protections can be waived.

Among the questions presented by the plaintiffs is whether documents prepared by the corporate defendant at the request of its independent auditor, reporting generally on pending litigation, and disclosed to that auditor are deserving of work product protection.  Also at issue is whether communications between the defendants and a Washington, D.C. law firm also authorized to engage in lobbying should be shielded from disclosure.  Defendants' motion raises questions

regarding the sufficiency of plaintiffs' objections to the production of requested documents on the grounds of attorney-client privilege and attorney work product.

Upon careful consideration of the governing legal principles, informed by an *in camera* review of the disputed documents, I make the following rulings, generally sustaining the parties' assertions of privilege and work product coverage and finding no basis to conclude that those protections have been waived.

I.    BACKGROUND

This action has as it genesis a default judgment entered on March 20, 2001 by the Tribal Court of the St. Regis Mohawk Tribe (the "Tribe") in favor of the Marlene Arquette and twenty-five other Tribal members and against five defendants, including Park Place Entertainment Corporation ("Park Place"), whose liabilities were assumed by defendant Harrah's Operating Company, Inc. ("Harrah's") as a result of a 2005 merger; Clive Cummis an individual affiliated with Park Place; and three members of the Tribal Council, in that judgment, *inter alia*, the plaintiffs were awarded damages totalling $1.787 billion, plus interest and costs. Complaint (Dkt. No. 1) ¶¶ 4, 6, 22 and Exh. A.  The litigation was preceded by two other suits filed with this court as an outgrowth of that

same Tribal Court proceeding.  In the first, *Park Place Entm't Corp., et al.*
v. *Arquette, et al.,* Civil Action No. 00-CV-0863 (N.D.N.Y. filed June 2,
2000) ("*Arquette I*"), Harrah's predecessor, Park Place, sought to enjoin
the Tribal Court action.  Complaint (Dkt. No. 1) ¶ 8(a); *see also* Civil
Action No. 00-CV-863, Dkt. No. 1.  In the second, certain representatives
of the Tribe requested enforcement of the Tribal Court judgment.
Complaint (Dkt. No. 1) ¶ 8(a);  *see also Arquette, et al. v. Park Place
Entm't Corp., et al.*, Civil Action No. 01-CV-1058 (N.D.N.Y. filed June 27,
2001) (*"Arquette II*").   Both actions were dismissed by the court, without
prejudice, on March 31, 2003, based upon a reported settlement reached
among the various interested parties.  Complaint (Dkt. No. 1) ¶ 8(a); *see
also Arquette I*, Dkt No. 50; *Arquette II*, Dkt. No. 56.

   The two named plaintiffs in this action, Dennis C. Vacco and Joseph
E. Bernstein, assert that they are trustees of the Catskill Litigation Trust
(the "Trust"), an entity formed in January of 2004, and in that capacity are
authorized to hold and manage the trust's assets, which include among
them the claims asserted in this action arising from the Tribal Court default
judgment.  Complaint (Dkt. No. 1) ¶ 1.  The assignment of the Arquette
parties' rights in connection with the Tribal Court judgment to the Trust
appears to have been effectuated by the execution of a Joint Alliance

Agreement, a document which has proven to be controversial and gives rise to one of the defenses at issue in connection with this motion.

II.   PROCEDURAL HISTORY

Plaintiffs commenced this action on June 22, 2007, invoking the court's subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332, asserting that by its nature the action raises one or more federal questions, and that in any event there is complete diversity of citizenship between the parties.  Complaint (Dkt. No. 1) ¶¶ 6, 7.  Named as defendants in the action are Harrah's and Clive Cummis, a licensed attorney who practices in New York City.  *Id.* ¶¶ 4, 5, 8(d).

In lieu of answering plaintiff's complaint, defendants instead sought its dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that 1) the plaintiffs improperly obtained their interest in the Tribal Court judgment pursuant to a champertous assignment prohibited under N.Y. Judiciary Law § 489(1), and 2) the issues raised in the action were previously settled in the context of a negotiated resolution of *Arquette I* and *Arquette II*.  Dkt. No. 16.  That motion resulted in the issuance of a decision and order by Senior District Judge Thomas J. McAvoy on December 4, 2007 in which, noting the need to consider materials outside of the record in order to inform his analysis of the two

issues raised, he opted against conversion of the motion to one for summary judgment, given the procedural posture of the case, and referred the matter to me to oversee discovery with respect to the two issues presented in the motion.  Dkt. No. 23.

The discovery dispute now before the court is not the first that has arisen since the issuance of Judge McAvoy's order.  Questions raised by both parties concerning the sufficiency of their respective adversary's discovery responses led to the earlier filing of cross-motions to compel discovery.  Dkt. Nos. 28, 29.  Following oral argument regarding those motions, I issued a bench decision, followed by a written order dated April 4, 2008, requiring the production of certain additional documents by both sides.  Dkt. No. 33.

After having been notified by the parties of the existence of lingering issues, I once again granted permission for the simultaneous filing of cross-motions to compel discovery.  In their motion, plaintiffs seek discovery of documents falling into two categories, one related to statements provided by representatives of Harrah's to its outside auditors regarding pending litigation, and the second concerning communications between Harrah's and Holland & Hart, LLP, a Washington, D.C. law firm retained to engage in activities which, defendants contend, were legal in

nature but which, plaintiffs argue, in fact represented little more than lobbying efforts on Harrah's behalf, principally before the Bureau of Indian Affairs ("BIA").  Dkt. No. 37.  Defendants' motion challenges the sufficiency of plaintiffs' responses to requests for additional documents relating to the drafting and execution of the Joint Alliance Agreement, the formation of the Catskill Litigation Trust, any financial support given by the Trust to tribal members, certain tribal resolutions related to the formation of the Tribal Court, and the tribal court judgment or other previous related actions.  Dkt. No. 36.  Oral argument was conducted regarding the parties' cross-motions during a digitally recorded telephone conference held on September 23, 2008, at which time decision was reserved and the parties were directed to produce the disputed, withheld materials for *in camera* review by the court.[1]

III.    DISCUSSION

    A.    Controlling Legal Principles

The parties' cross-motions implicate protections afforded under both the attorney-client privilege and the work product doctrine, the latter of which generally protects materials prepared in anticipation of litigation.

---

[1]    Defendants have since been instructed by the court to furnish any retainer agreement entered into with Holland & Hart, LLP for *in camera* inspection, and have now complied with that directive.

Before turning to the specifics of the issues now presented, it is helpful to recount the general principles associated with both protections, the underlying policies supporting them, the contours of the protections afforded, and the circumstances under which a party may waive protection under either.

### 1.    Attorney-Client Privilege

Since this court's jurisdiction is based principally upon diversity of citizenship, the attorney-client privilege analysis is informed by New York Law.[2]  Fed. R. Evid. 501; *see also Dixon v. 80 Pine Street Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975); *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 470 (S.D.N.Y. 2003).  By statute, New York gives protection to any "confidential communication made between the attorney or his or her employee and the client in the course of professional employment[.]" N.Y. C.P.L.R.  4503(a)(1).  Under this provision, which has been characterized by the New York Court of Appeals as a "'mere re-

---

[2]    As was previously noted, plaintiff's complaint also seeks to invoke federal question jurisdiction.  *See* Complaint (Dkt.No. 1) ¶ 6.  While enforcement of a judgment entered in a Native American court implicates certain broader federal considerations, the essence of plaintiffs' claim is an effort to enforce a foreign judgment, a matter which does not in and of itself present a federal question.  *Stiller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963).  In the end, as both parties agreed during oral argument, it does not appear that there is any material difference between New York and federal common law insofar as the attorney-client privilege principles applicable to this case are concerned.  *Accord Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp.2d 70, 75 (N.D.N.Y. 2000) (Scullin, J.) ("New York law governing the attorney-client privilege . . . is generally similar to accepted federal doctrine.") (quotations and citations omitted).

enactment of the common-law rule'", *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 78 N.Y.2d 371, 377, 581 N.E.2d 1055, 1060, 575 N.Y.S.2d 809, 814 (1991) (quoting *Hurlburt v. Hurlburt*, 128 N.Y. 420, 424, 28 N.E. 651, 652 (1891)), attorney-client protection "extends to both confidential information provided to the lawyer by the client and legal advice given by an attorney that discloses such information." *Nat'l Educ. Training Group, Inc. v. Skillsoft Corp.*, No. M8-85, 1999 U.S. Dist. LEXIS 8680, at *7-8 (S.D.N.Y. June 10, 1999) (citations omitted)*.* The burden of establishing that the prerequisites for the attorney-client privilege have been met rests with the party seeking to invoke its protections. *In re F.T.C.*, No. M18-304, 2001 WL 396522, at *2 (S.D.N.Y. April 19, 2001); *In re Nassau County Grand Jury Subpoena Dated June 24, 2003*, 4 N.Y.3d 665, 678-79, 830 N.E.2d 1118, 1126, 797 N.Y.S.2d 790, 798 (2005).

In determining whether it should apply, a court should not lose sight of the strong policy considerations which form the underpinning of the attorney-client privilege – one which is deeply rooted in our country's jurisprudence, and finds its origins in English common law. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981) (citing 8 J. Wigmore, Evidence § 2290 (McNaughten rev. 1961)). In fulfilling its underlying policy considerations, the privilege seeks "to encourage full and

frank communication between attorneys and their clients and thereby

promote broader public interests in the observance of law and

administration of justice." *Upjohn*, 449 U.S. at 389, 101 S. Ct. at 682; *see*

*also In re County of Erie*, No. 07-5702, 2008 WL 4554920, at *5 (2d Cir.

Oct. 14, 2008) (*citing Swidler & Berlin v. United States,* 524 U.S. 399, 403,

118 S. Ct. 2081, 2084 (1998)).  It is generally thought that serious

encroachment upon this privilege would vastly undermine the ability of an

attorney to represent a client effectively, and would have a potentially

chilling effect upon the candor in the flow of communications necessary for

proper fulfillment of an attorney's role.  *Upjohn,* 449 U.S. at 389; *see also*

24 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and

Procedure § 5472 (1986 & 2003).

Despite the important and longstanding considerations supporting

the privilege, it exists in obvious tension with the overarching belief that

under our system of justice, all relevant information should be disclosed

and considered when a dispute is resolved.  *Spectrum Sys. Int'l Corp.*, 78

N.Y.2d at 376-77, 581 N.E.2d at 1059, 575 N.Y.S. 2d at 813.  Because it

serves to shield otherwise potentially relevant information, and thus runs

counter to the goal of promoting full disclosure, the attorney-client privilege

is narrowly construed to provide no greater protection than necessary to

accomplish its desired purpose of fostering open dialogue between client

and attorney. *Nat'l Educ. Training Group, Inc.*, 1999 U.S. Dist. LEXIS

8680, at *8-9. As the Second Circuit has observed,

> [t]he privilege itself is an exception to the critically
> important duty of citizens to disclose relevant
> evidence in legal proceedings. It does not shield
> communications which serve purposes other than
> those which led to judicial recognition of the
> privilege.

*In re John Doe Corp.*, 675 F.2d 482, 489 (2d Cir. 1982) (citation omitted).

Despite its longstanding roots and strong policy underpinnings, the

protections afforded by the attorney-client privilege may be waived.

*Lugosch v. Congel*, No. 1:00-CV-0784, 2006 WL 931687, at *17 (N.D.N.Y.

March 7, 2006) (Treece, M.J.). While by no means the sole basis for

finding waiver, a party who voluntarily shares privileged information with

another individual or entity whose legal interests are not mutually aligned

is generally considered to have abandoned the protections of the privilege.

*Id.* Because of the strong public policy considerations which support it,

however, "rules which result in the waiver of [the] privilege and thus

possess the potential to weaken attorney-client trust, should be formulated

with caution." *In re County of Erie,* 2008 WL 4554920, at *5.

    2.   <u>Work Product Doctrine</u>

Materials prepared in anticipation of litigation are protected from

disclosure under Rule 26(b)(3) of the Federal Rules of Civil Procedure, which memorializes a doctrine having its roots in the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385 (1947).[3]  To warrant protection under this provision, a document must comprise 1) a document or tangible thing, 2) which was prepared in anticipation of litigation, and 3) was prepared by or for a party, or by or for its representative.  *United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995); *Tayler v. Travelers Ins. Co.*, 183 F.R.D. 67, 69 (N.D.N.Y. 1998) (Hurd, M.J.) (citations omitted).  As is the case with regard to other discovery exemptions, the burden of establishing entitlement to work product protection rests squarely with the party seeking to avoid disclosure.  *Tayler*, 183 F.R.D. at 69; *see also Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993) (citations omitted).

Although the rule itself is not so limited in its application, by its

---

[3]      That rule provides, in pertinent part, that subject to subdivision (b)(4) (related to expert discovery), a party may obtain discovery of "documents and tangible things" otherwise discoverable under subdivision (b)(1) and "prepared in anticipation of litigation or for trial by or for another party or [that other party's] representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" only upon a showing that the party seeking discovery "has substantial need of the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3).  In ordering discovery of such materials when the required showing has been made, the court shall "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative [of a party] concerning the litigation."  *Id.*

express terms Rule 26(b)(3) pays particular deference to the work product

of an attorney.  Attorney work product is best described as encompassing

the mental impressions and legal opinions made by a lawyer, the

governing rule in essence creating "a zone of privacy for an attorney's

preparation to represent a client in anticipation of litigation."  *In re Grand*

*Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156, 160 (2d Cir. 2002)

(citing *Hickman*, 329 U.S. at 510-11, 67 S. Ct. at 393 and *United States v.*

*Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998)).

      B.   <u>Plaintiffs' Motion</u>

           1.   <u>Auditor Statements</u>

In response to both document demands served upon the defendants

and a subpoena issued pursuant to Rule 45 of the Federal Rules of Civil

Procedure upon Deloitte & Touche, LLP ("D&T"), ten documents from

Harrah's files and sixty-three within the possession of D&T have been held

back from discovery.  The limited privilege log provided with regard to the

ten documents withheld by Harrah's reflects that they were generated

between July 12, 2005 and October 29, 2007, and are all described

generically as "General Counsel Report to Audit Committee".[4]  Plaintiffs'

_____

    [4]     My order dated April 4, 2008, compelling discovery, required, *inter alia,*
"that any documents withheld from production but otherwise falling within the scope of
[the] order must be listed on an appropriate privilege log served upon the withholding
party's adversary."  Dkt. No. 33 at p. 4.  Notwithstanding this explicit directive, during a
telephone conference held one week later the parties agreed between themselves not

Motion (Dkt. No. 37) at pp. 1-2 and Exh. D.  The log does not specify the basis for withholding the documents.  *Id.*  There is no privilege log provided with regard to the documents withheld by the auditors.  Since it is well established that documents exchanged between a company's in-house or outside counsel and its auditors are not protected by the attorney-client privilege, *see In re John Doe Corp.,* 675 F.2d at 488-89, and defendants do not contend otherwise, it appears that the documents in issue have been withheld under claim of work product protection.

In response to this claim, plaintiff initially argues that the documents do not qualify for work product protection since they were all generated after *Arquette I* and *Arquette II* were settled, and all but two came prior to commencement of this action.  Plaintiffs' Motion (Dkt. No. 37) at p. 2.  This argument is easily dispensed with.  At the outset I note that communications do not necessarily lose work product protection simply because they relate to the settlement of an action.  *See Rumain v. Baruch*

_____

to require the production of privilege logs from each other.  *See* Defendants' Opposition (Dkt. No. 38) at pp. 1-2.  As plaintiffs now argue, under ordinary circumstances the failure to provide an appropriate privilege log can operate as a waiver of otherwise available protection against production of otherwise relevant and discoverable materials.  *See U.S. v. Constr. Prod. Research, Inc.*, 73 F.3d 464 (2d Cir. 1996); *NXIVM Corp. v. O'Hara,* 241 F.R.D. 109, 130 (N.D.N.Y. 2007) (Treece, M.J.)*; Johnson v. Bryco Arms,* No. 03 CV 2582, 2005 WL 469612, at *3-4 (E.D.N.Y. March 01, 2005).  In this instance, however, given the parties' apparent agreement to excuse this meaningful requirement, I conclude that plaintiffs are not well positioned to assert waiver under these circumstances.

*College of City Univ. of New York*, No. 06 Civ. 8256, 2007 WL 4462178, at

*2 (S.D.N.Y. Dec. 14, 2007).  Moreover, while it is true that the *Arquette*

actions may have been considered by some to have been settled – a

matter which is vigorously contested – the underlying dispute concerning

tribal leadership and the rights to develop gaming operations under tribal

auspices raged on, including administratively before the BIA, even after

dismissal of *Arquette I* and *Arquette II*.  The court doubts that anyone, and

certainly least of all the plaintiffs in this action, had any expectation that

the matter would not generate further litigation in one or more available

fora.

Whether the disputed litigation summaries are deserving of work

product protection at all presents a closer question.  Characterizing the

disputed reports as "by their very nature, made in the ordinary course of

business[,]" plaintiffs argue that they do not qualify for work product

protection particularly since they do not evince such matters as mental

impressions of counsel and litigation strategy.  *See* Plaintiffs' Motion (Dkt.

No. 37) at p. 2.  In support of their argument, plaintiff's cite *In re Bairnco

Corp. Sec. Litig.,* 148 F.R.D. 91, 103 (S.D.N.Y. 1993).  *Id.*  Defendants

counter that the plaintiffs have taken an unduly restrictive view of the

protection afforded by the work product doctrine, and that the litigation

summaries at issue represent quintessential work product.  Defendants'

Opposition (Dkt. No. 38) at pp. 3-12.

The Second Circuit Court of Appeals had occasion to explore the

contours of the work product doctrine in settings such that now presented

in *United States v. Adlman*, 134 F.3d 1194.  In that case the court posited

three hypotheticals to illustrate various potential circumstances under

which work product protection could arise.  *Adlman*, 134 F.3d at 1199-

1200.  The third of those hypotheticals included the following attributes:

> A business entity prepares financial statements to
> assist its executives, stockholders, prospective
> investors, business partners, and others in
> evaluating future courses of action. Financial
> statements include reserves for projected litigation.
> The company's independent auditor requests a
> memorandum prepared by the company's
> attorneys estimating the likelihood of success in
> litigation and an accompanying analysis of the
> company's legal strategies and options to assist it
> in estimating what should be reserved for litigation
> losses.

*Id.* at 1200.  After setting forth the three examples the appellate court

noted that in each instance legal analysis of the type giving rise to the

work product protection is involved.  *Id.*  The court went on to formulate a

"because of litigation" test which would shield materials in situations where

"the document can fairly be said to have been prepared or obtained

*because of* the prospect of litigation."  *Id.* at 1202 (citing and quoting*, inter*

*alia,* Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8

Federal Practice & Procedure § 2024, at 343 (1994)) (*emphasis added* by

Second Circuit in *Adlman*).  Attempting to clarify by contrasting other

potential circumstances, the court continued that "it should be emphasized

that the 'because of' formulation that we adopt here withholds protection

from documents that are prepared in the ordinary course of business or

that would have been created in essentially similar form irrespective of the

litigation."  *Adlman*, 134 F.3d at 1202.  Against this backdrop, I have

reviewed the disputed communications *in camera*, and conclude at the

outset that they are entitled to work product protection.

Placing heavy reliance upon the court's decision in *Medinol, Ltd. v.*

*Boston Scientific Corp.,* 214 F.R.D. 113, 116 (S.D.N.Y. 2002), plaintiffs

argue that even if the litigation summaries at issue are deserving of work

product protection, that protection was waived when they were disclosed

to D&T in light of its position as an independent outside auditor and the

potentially adversarial nature of that relationship.  Plaintiffs' Motion (Dkt.

No. 37) at p. 3.  *Medinol,* however, has been almost uniformly rejected as

adopting far too restrictive of a view regarding the circumstances under

which a waiver can occur.  *See, e.g., Am. Steamship Owners Mut. Prot.*

*and Indem. Ass'n, Inc. v. Alcoa Steamship Co., Inc., et al.*, No. 04 Civ.

4309, 2006 WL 278131, at *2 (S.D.N.Y. Feb 2, 2006).  While disclosure of materials covered by the attorney-client privilege to third parties with no common interest can and generally does result in a waiver of the privilege, *see e.g., Sokol v. Wyeth,* No. 07 Civ. 8442, 2008 WL 3166662, at *5 (S.D.N.Y. Aug 4, 2008); *Denney v. Jenkens & Gilchrist*, 362 F. Supp.2d 407, 412 (S.D.N.Y. 2004)*,* the law is not nearly so ungenerous when it comes to the sharing of materials subject to work product protection.  *See, e.g., U.S. v. Stewart*, 287 F. Supp.2d 461, 468-69 (S.D.N.Y. 2003).  The policy underlying work product protection is "'to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent.'"  *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.,* 229 F.R.D. 441, 445 (S.D.N.Y. 2004) (citing and quoting *United States v. Am. Tel. & Tel. Co.,* 642 F.2d 1285, 1299 (D.C. Cir. 1980)).  Accordingly, work product privilege is not automatically waived through disclosure to a third person absent a basis to conclude that "'disclosure is inconsistent with maintaining secrecy from possible adversaries.'"  *Merrill Lynch,* 229 F.R.D. at 445 (citing and quoting *Stix Prods. v. United Merchants and Mfrs.,* 47 F.R.D. 334, 338 (S.D.N.Y. 1969)).

For these reasons, most courts which have addressed the specific

issue of whether the sharing of litigation related statements with outside auditors should result in a waiver have sided with the defendants in eschewing *Medinol.  See, e.g.*, *Securities and Exchange Commission v. Roberts,* No. C 07-04580, 2008 WL 3925451, at *10-11 (N.D. Cal. Aug. 22, 2008); *Am. Steamship Owners,* 2006 WL 2781341, at *2; *Lawrence E. Jaffee Pension Plan v. Household Int'l, Inc.,* 237 F.R.D. 176, 181(N.D. Ill. 2006); *see also Tronitech, Inc. v. NCR Corp.,* 108 F.R.D. 655, 657 (S.D. Ind. 1985) (similarly holding, although prior to the court's decision in *Medinol*).

In sum, having concluded that defendants have established a basis to assert work product protection with regard to the disputed litigation summaries developed for D&T, and finding no waiver as a result of the disclosure of those documents, I will deny this portion of plaintiffs' motion to compel discovery.

## 2.   Communications with Holland & Hart, LLP

The second issue raised in plaintiffs' motion, implicating a far greater number of withheld documents, relates to communications between representatives of the defendants, including between their counsel in this action and Thomas L. Sansonetti, Esq. and William G. Myers, Esq., two

affiliates of the Washington, D.C. law firm of Holland & Hart, LLP.[5]

Plaintiff maintains that because the efforts of those two individuals, though

licensed attorneys, by their nature represented lobbying, any

communications between them and representatives of the defendant are

not privileged.  Plaintiffs' Motion (Dkt. No. 37) at pp. 4-6.  Characterizing

the actions of the Holland & Hart attorneys at issue as legal in nature,

rather than representing mere lobbying efforts, defendants respond that

the communications are entitled to attorney-client privilege protection.

Defendants' Opposition (Dkt. No. 38) at pp. 12-16.  As an alternative basis

for withholding disclosure of those communications, Harrah's asserts that

in any event they constitute work product, and their disclosure to Holland

& Hart provides no basis for a waiver.  *Id.* at pp. 16-18.

There are two immutable principles at play with respect to this issue.

The first directs that communications between a lobbyist and his or her

---

[5]      According to information publically posted on the Holland & Hart website, Mr. Sansonetti served as the Solicitor of the Department of the Interior ("DOI"), the parent agency of the BIA, and as such was the number three ranked person within that department at the time. Holland & Hart, LLP, People: Attorneys/Professionals Profile, http://www.hollandhart.com/peopleprofile.cfm?IDname=personID&ID=0861 (last visited Oct. 27, 2008). Sansonetti joined Holland & Hart in 1993 and has developed what is described as a "national practice in national resources and environmental law." *Id.* That same website indicates that Mr. Myers also served as the Solicitor of the DOI and has several years of prior federal governmental experience, particularly specializing in energy and natural resources issues. Holland & Hart, LLP, People: Attorneys/ Professionals Profile, http://www.hollandhart.com/peopleprofile.cfm?Idname= personID&ID=0998 (last visited Oct. 27, 2008).  The website states that since joining Holland & Hart in 1997 Myers has "advised clients on utilization of federal lands, environmental compliance, legislative matters, and litigation." *Id.*

client are not entitled to attorney-client protection solely by virtue of that relationship, even though the lobbyist may also be a licensed attorney. *In re Grand Jury Subpoena Dated March 9, 2001*, 179 F. Supp.2d 270, 285 (S.D.N.Y. 2001) (citation omitted). Conversely, it is equally true that the fact that an attorney also engages in lobbying does not automatically divest communications between that individual and his or her client of attorney-client protection. *Id.* The analysis as it relates to such documents, then, is entirely contextual and depends upon the nature of the services as illuminated by the contents of those communications and other relevant factors shedding light on the parties' relationship. *Id.*; *see also NXIVM Corp.*, 241 F.R.D. at 128-32.

I have reviewed the disputed communications *in camera* in order to assist in making a determination regarding those documents. The documents reviewed by the court confirm defendants' assertion that they relate to advice, given by Holland & Hart to Harrah's and/or their counsel in this action, Boise, Schiller & Flexner, relative to the prosecution of this action as well as pending administrative proceedings before the DOI. This is exemplified by the fact that based upon information and advice received from those attorneys at Holland & Hart, LLP, defendants' attorney, George F. Carpinello, Esq., sent a letter dated August 14, 2007 to the BIA setting

forth the position of his clients concerning whether the Tribal Court which issued the original judgment in this case was properly constituted in March of 2001.  *See* Defendants' Opposition (Dkt. No. 38) at Exh. B.  The conclusion that the services rendered by Holland & Hart, LLP were predominately legal is reinforced by the retainer agreement entered into at the outset of the firm's engagement.  Based upon these factors and my *in camera* review, I conclude that the disputed documents are attorney-client privileged materials subject to protection from disclosure.  `

   C.   Defendants' Motion

   In their motion, defendants seek enforcement of five document discovery requests.  *See generally* Defendants' Motion (Dkt. No. 36).  Like plaintiffs' motion, the application filed by Harrah's and Cummis implicates matters involving the attorney-client privilege as well as whether the privilege extends to mutually aligned parties under a common interest theory.  *Id.*

   1.   Joint Alliance Agreement

   Defendants' first disputed request seeks documents related to an agreement entered into between the Trust and the Tribe, designated as a "Joint Alliance Agreement."  Defendants' Motion (Dkt. No. 36) at pp. 1-2. Drafts of that agreement have been withheld from discovery by the

plaintiffs based upon the fact that they were prepared by attorneys for the Trust and shared only with the Tribe, a party with a common litigation interest.  Plaintiff's Opposition (Dkt. No. 39) at p. 2.

When two or more parties share a common legal interest, legal advice provided with respect to that common interest is shielded by the attorney-client privilege, absent a basis to find a waiver.  *U.S. v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1996); *In re Rivastigmine Patent Litig.*, No. 05 MD 1661, 2005 WL 2319005, at *2 (S.D.N.Y. Sept. 22, 2005).  Under this doctrine, which is distinct from the joint defense privilege, it is not required that an actual suit be pending at the time the privilege communications are disclosed.  *Schwimmer*, 892 F.2d at 243-44.  Similarly, despite defendants' argument to the contrary, it is not necessary that a formal written common interest agreement have been entered into in order to invoke the common interest privilege; it is enough that there is an oral understanding between the parties toward mutual cooperation.  *In re Rivastigmine Patent Litig.*, 2005 WL 2319005, at *4.

The court has reviewed the documents otherwise responsive to this request but withheld, and agrees that they are subject to the attorney-client privilege and that in light of the common interest privilege, there is no basis to find a waiver based upon the sharing of those documents with

third parties.  This portion of defendants' motion will therefore be denied.

## 2.   Documents Relative to Formation of the Trust

Defendants' fourth document demand requests the production of materials concerning formation of the Trust.  Defendants' Motion (Dkt. No. 36) at p. 2.  Plaintiffs have withheld documents, including drafts of the trust agreement, as attorney-client privileged in light of the fact that they were prepared for the Trust and shared only with the Trust or those with a common interest.  Plaintiffs' Opposition (Dkt. No. 39) at p. 2.  Having reviewed the disputed, withheld documents *in camera,* I agree and will therefore deny this portion of defendants' motion as well.

## 3.   Sufficiency of Search for Documents

Defendants' fifth document request seeks materials within the possession, custody, or control of a large number of individuals, quantified by the parties at thirty-three.[6]  Defendant challenges the sufficiency of plaintiff's search for the requested materials, and specifically whether it was reasonably calculated to uncover all of the documents sought and located within the possession, custody, or control of those individuals. Defendants' Motion (Dkt. No. 36) at p. 2.

During the recent hearing representations were made to the court

---

[6]     Plaintiffs' counsel represents that several of the individuals involved are deceased.

24

regarding the search conducted by plaintiffs' representatives in response to this request.  Based upon the representations of counsel I find that the search was reasonable and sufficient to meet the obligations of the plaintiffs to provide discovery. This portion of defendants' motion to compel will therefore similarly be denied.

### 4.   Documents Reflecting Payments Made by the Trust

Defendants' sixth document demand relates to payments made to the plaintiffs in *Arquette I* and *Arquette II* by third parties, a matter potentially bearing upon the champerty issue raised in the defendants' dismissal motion.  Defendants' Motion (Dkt. No. 36) at p. 3.  In response, plaintiffs assert that they have produced all documents within the possession custody or control of the Trust, which was only formed in January of 2004, noting that certain payments were made prior to that date by Catskill Development, LLC, an entity which has been dissolved and whose assets, including its files, were assigned to Empire Resorts, Inc. in January of 2004, plaintiffs adding they have no control over that entity.  Plaintiffs' Opposition (Dkt. No. 39) at p. 3.

Defendants' document discovery requests are governed by Rule 34 of the Federal Rules of Civil Procedure, which allows a party to request, *inter alia*, production of documents which are in the "possession, custody,

or control" of the party upon which the request is served.  Fed. R .Civ. P. 34(a).  The touchstone of control, which has been variously defined by the courts, is the ability, whether through exercise of a legal right or authority or through other means, to obtain the requested documents.  *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *Camden Iron and Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991); *M.L.C., Inc. v. North Am. Phillips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y. 1986); *see also Playboy Entm't Group, Inc. v. United States*, No. CIV. A. 96-94, 1997 WL 873550, at *3 (D. Del. Dec. 11, 1997) (citing, *inter alia*, *Camden Iron*, 138 F.R.D. at 441).  As utilized in Rule 34, the term "control" is broadly construed by the courts.  *Camden Iron*, 138 F.R.D. at 441 (citing *Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989)).  The burden of establishing a party's control over requested documents, however, rests with the party seeking to compel production.  *Id.* (citing *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F. 2d 1450, 1452 (9th Cir. 1989)).

The question of a party's control over documents possessed by a non-party is inherently fact specific.  Addressing the issue, courts have examined various relevant factors, including the corporate structures and interrelationships of the entities involved; whether there is financial

dependency or overlap among the relevant entities; the extent of any common ownership and management, including among directors and officers; the non-party's connection to the transaction at issue; and whether the non-party stands to benefit from a favorable litigation outcome.  *Playboy Entm't Group, Inc.*, 1997 WL 873550, at *3; *Camden Iron*, 138 F.R.D. at 441-42; 7 James Wm. Moore et al., Moore's Federal Practice § 34.12 (3d. ed. 1997).  An important factor to be considered is the very practical consideration of the ability of the party from whom the documents are sought to obtain them on demand from the non-party in possession of them.  *Playboy Entm't Group, Inc.*, 1997 WL 873550, at *3 (citing, *inter alia*, *Camden Iron*, 138 F.R.D. at 441).

At the present time the court has insufficient information from which it could conclude that the records of Empire are indeed within plaintiffs' possession, custody, or control.  Under the circumstances, this portion of defendants' motion will therefore be denied, without prejudice to renewal after further discovery is conducted to flesh out the critical facts surrounding this issue.

### 5.   Tribal Council Resolutions

Defendants' final issue concerns a request for documents relative to various tribal council resolutions specified in the request.  Defendants'

Motion (Dkt. No. 36) at p. 5.  In response, plaintiffs note that documents
otherwise responsive to this request are being withheld based upon a
claim of privilege, asserting that the resolutions were drafted by plaintiff
Dennis Vacco, Esq., who at the time was acting as counsel to the Tribe.
Plaintiffs' Opposition (Dkt. No. 39) at p. 3.  Plaintiffs further assert that the
documents were not shared with unrelated parties without a common
litigation interest, such that the privilege could be considered to have been
waived.  *Id.*  Under these circumstances, having reviewed the disputed
documents *in camera*, I conclude that this portion of defendants' motion
similarly should be denied.

IV.    <u>SUMMARY AND CONCLUSION</u>

The dispute now before the court presents issues which call upon
the court to apply established rules to determine whether the documents
in issue are worthy of attorney-client and/or work product protection, and
whether any such protection has been lost by virtue of the fact that those
documents were communicated to third parties.  Having reviewed the
documents and applied the controlling legal principles, I conclude that the
materials provided by the defendants to D&T, their outside auditors,
constitute work product, and that the resulting protection against
disclosure was not waived.  Similarly, I find that the disputed materials

exchanged with defendants' outside attorneys at Holland & Hart are entitled to protection as attorney-client privileged documents.  Turning to the issues raised by defendants' motion, I conclude based upon my *in camera* review that each of the documents withheld is protected from disclosure, and that based upon the record now before the court the plaintiffs have made a search reasonably calculated to uncover relevant, responsive documents.  Accordingly, it is hereby

ORDERED as follows:

1)  Plaintiffs' motion to compel discovery (Dkt. No. 37) is DENIED.

2)  Defendants' motion to compel discovery (Dkt. No. 36) is DENIED, without prejudice to renewal to seek disclosure of relevant, non-privileged documents held by Empire Resorts, Inc.

3)  No costs or attorneys' fees are awarded to any party in connection with the pending cross-motions.

David E. Peebles
U.S. Magistrate Judge

Dated:      October 29, 2008
            Syracuse, NY